SEYFARTH SHAW LLP
Laura Wilson Shelby (SBN 151870)
lshelby@seyfarth.com
Leo Q. Li (SBN 293539)
lli@seyfarth.com
Jennifer R. Nunez (SBN 291422)
jnunez@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:    (310) 201-5219

Attorneys for Defendants
ALDI INC. and AI CALIFORNIA LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER LACEY-SALAS, an individual, on behalf of herself and on behalf of all persons similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>ALDI INC., a California corporation; AI CALIFORNIA LLC, an unknown business entity; and DOES 1 through 100, inclusive,<br><br>      Defendants. | Case No.  **'19 CV 1269 MMA MDD**<br><br>Class Action And Representative Action<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, 1453**<br><br>[San Diego County Superior Court; Case No. 37-2019-00029288-CU-OE-CTL]<br><br>*Filed concurrently with Corporate Disclosure Statement, Notice of Interested Parties, and Declaration of Paul Piorkowski.*<br><br>Complaint Filed:     June 7, 2019 |

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF JENNIFER LACEY-SALAS AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants ALDI Inc. ("ALDI") and AI California LLC ("AI") (collectively, "Defendants") file this Notice of Removal, (1) asserting federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") pursuant to 28 U.S.C. §§ 1332, 1441, 1446, 1453, and (2) asserting original federal question jurisdiction pursuant to 28 U.S.C. § 1331, to effectuate the removal of the above-captioned action, which was originally commenced in the Superior Court of the State of California for the County of San Diego, to the United States District Court for the Southern District of California. This Court has original jurisdiction over the action pursuant to CAFA and federal question jurisdiction for the following reasons:

## I.    BACKGROUND

1.     On June 7, 2019, Plaintiff Jennifer Lacey-Salas ("Plaintiff") filed a class action complaint in the Superior Court of California for the County of San Diego, titled "*JENNIFER LACEY-SALAS, an individual, on behalf of herself and on behalf of all persons similarly situated; Plaintiff v. ALDI INC., a Corporation; AI California LLC, a Limited Liability Company; and DOES 1 through 50, inclusive, Defendants*," Case No. 37-2019-00029288-CU-OE-CTL ("Complaint"). The Complaint asserts eight causes of action for: (1) Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*, (2) Failure to Pay Overtime Wages, (3) Failure to Provide Required Meal Periods, (4) Failure to Provide Required Rest Periods, (5) Failure to Provide Accurate Itemized Statements, (6) Failure to Reimburse Employees for Required Expenses, (7) Failure to Provide Wages When Due, and (8) Violation of the Private Attorneys General Act.

2.     On June 11, 2019, AI's registered agent for service of process in California received, via process server, a copy of the Civil Case Cover Sheet, Summons, Complaint, Notice of Case Assignment and Case Management Conference, and Alternative Dispute

Resolution (ADR) Information Packet. A true and correct copy of the service packet received by Defendant is attached hereto as **Exhibit A**.

3.    On June 28, 2019, counsel for ALDI received an email from counsel for Plaintiff. The email attached a Notice and Acknowledgment of Receipt, Civil Case Cover Sheet, Summons, Complaint, Notice of Case Assignment, Alternative Dispute Resolution Information, and Stipulation to Use Alternative Dispute Resolution. A true and correct copy of the service packet received by ALDI is attached hereto as **Exhibit B**.

4.    On July 8, 2019, Defendants jointly filed the Answer to Plaintiff's Complaint in San Diego Superior Court. A true and correct copy of Defendants' Answer to Plaintiff's Complaint is attached hereto as **Exhibit C**.

5.    Defendants have not filed or received any other pleadings or papers, other than the pleadings described as Exhibits A through C in this action prior to the Notice of Removal.

## II.    TIMELINESS OF REMOVAL

6.    Notice of removal is timely if it is filed within 30 days after the service of the complaint or summons—"The notice of removal … shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant…." 28 U.S.C. §1446(b)(1).

7.    Defendants' Notice of Removal is timely because it is filed on July 10, 2019, which is within 30 days of service of the Summons and Complaint. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) ("we hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint….").

## III.    REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

8.    Under the CAFA, district courts have original jurisdiction for class actions "if [1] the class has more than 100 members, [2] the parties are minimally diverse, and

57625606v.2

[3] the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 552 (2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B)).

### A.    The Class Action Includes At Least 1,811 Putative Class Members

9.     A removal under CAFA requires at least 100 members in a proposed class. *See* 28 U.S.C. § 1332(d)(5)(B) (providing that CAFA jurisdiction does not apply to any class action in which "the number of members of all proposed plaintiff classes in the aggregate is less than 100").

10.     Here, Plaintiff defines the "proposed class" to include "[a]ll individuals who are or previously were employed by Defendants Aldi Inc. and/or AI California LLC in California and classified as non-exempt employees at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court." (Complaint, ¶5.) Based on the filing date of the Complaint on June 7, 2019, the proposed class period covers the time period of June 7, 2015, to the present.

11.     **Based on the proposed class definition, there are at least 1,811 current and former non-exempt employees in the proposed class as of April 30, 2019**. (Declaration of Paul Piorkowski ("Piorkowski Decl."), ¶10.) Thus, there is no question that the size of the proposed class far exceeds the minimum threshold of 100 members under CAFA.

### B.    Plaintiff And Defendants Are Minimally Diverse

12.     Under 28 U.S.C. § 1332(d)(2)(A), CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction—that is, at least one purported class member must be a citizen of a state different than any named defendant. 28 U.S.C. § 1332(d)(2)(A) ("any member of a class of plaintiffs is a citizen of a State different from any defendant").

13.     A party's citizenship is determined at the time the lawsuit was filed. *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008) ("[T]he

NOTICE OF REMOVAL

jurisdiction of the court depends upon the state of things at the time of the action [was] brought.").

14.    In this case, at the time of the lawsuit was filed, Plaintiff is a citizen of the State of California, and both Defendants are citizens of a state other than California—ALDI is a citizen of Illinois, and AI is a citizen of both Delaware and Illinois.

### 1.    Plaintiff Is A Citizen of California

15.    For diversity purposes, a natural person's state citizenship is determined by that person's domicile—*i.e.*, "[one's] permanent home, where [that person] resides with the intention to remain or to which [that person] intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed").

16.    In this case, Plaintiff alleges that she "was employed by Defendant[s] in California as a non-exempt employee … from August of 2017 to January of 2019." (Complaint, ¶4.)

17.    Additionally, Plaintiff provided ALDI with her home address during the course of her employment for purposes of her personnel file, payroll checks, and tax withholdings. (Piorkowski Decl., ¶4.) ALDI's review of Plaintiff's personnel file from her employment with ALDI reveals that Plaintiff resides in Escondido, California. (Piorkowski Decl., ¶4.)

18.    Plaintiff's intent to remain domiciled in California also is evident from the fact that she brought this lawsuit against Defendants in San Diego Superior Court. Therefore, Plaintiff was at all relevant times, and still is, a citizen and resident of the State of California.

### 2.    ALDI Is Not A Citizen Of California

19.    ALDI has been a citizen of Illinois within the meaning of 28 U.S.C. § 1332(c)(1).

20.     For diversity purposes, the citizenship of a corporation is "every state and foreign state by which it has been incorporated and of the state or foreign state where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1).

21.     The "principal place of business" means the corporate headquarters where a corporation's high level officers direct, control and coordinate its activities on a day-to-day basis, also known as the corporation's "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 92-93 (2010) (rejecting all prior tests in favor of "nerve center" test). Under the "nerve center" test, the "principal place of business" means the corporate headquarters where a corporation's high level officers direct, control and coordinate its activities on a day-to-day basis. *Id.* at 92-93 ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities"); *see also Industrial Tectonics, Inc., v. Aero Alloy*, 912 F.2d 1090, 1092-93 (9th Cir. 1990) (holding that the "nerve center" is where "its executive and administrative functions are performed").

22.     In this case, ALDI is a corporation that at all relevant times during this litigation was incorporated and existing under the laws of the State of Illinois. (Piorkowski Decl., ¶5.) ALDI's headquarters is located in Batavia, Illinois, where its high level officers direct, control, and coordinate its activities. (Piorkowski Decl., ¶6.) Additionally, the majority of ALDI's executive and administrative functions are performed in or directed from the Batavia, Illinois, offices, including corporate finance, accounting, purchasing, marketing, and information systems. (Piorkowski Decl., ¶6.)

23.     Given that ALDI's place of incorporation is in the State of Illinois and its principal place of business is in the State of Illinois, ALDI is a citizen of Illinois. Thus, there is complete diversity between Plaintiff (California) and ALDI (Illinois).

### 3.     AI Is Not A Citizen Of California

24.     AI has been a citizen of Delaware and Illinois within the meaning of 28 U.S.C. § 1332(c)(1).

57625606v.2

25.    AI is now, and ever since the commencement of this action has been a limited liability company, organized under the laws of the State of Delaware with its principal place of business in Batavia, Illinois. (Piorkowski Decl., ¶¶8-9.) AI's principal place of business is in Illinois because it is where its headquarters is located, where its high level officers direct, control, and coordinate its activities. (Piorkowski Decl., ¶9.) Additionally, the majority of AI's executive and administrative functions are performed in or directed from the Batavia, Illinois, offices, including corporate finance, accounting, purchasing, marketing, and information systems. (Piorkowski Decl., ¶9.)

26.    "For purposes of diversity jurisdiction, a limited liability company 'is a citizen of every state of which its owners/members are citizens.'" *3123 SMB LLC v. Horn*, 880 F.3d 461, 465 (9th Cir. 2018) (citing *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006)).

27.    In this case, AI's sole member has been ALDI, and ALDI owns 100% of AI. (Piorkowski Decl., ¶7.) Given that ALDI is a citizen of Delaware and Illinois, as discussed above, AI also is a citizen of Delaware and Illinois. Thus, there is complete diversity between Plaintiff (California) and AI (Delaware and Illinois).

### 4.    Doe Defendants' Citizenship Should Be Disregarded

28.    The other defendants named in the Complaint are merely fictitious parties identified as "DOES 1 through 50" whose citizenship shall be disregarded for purposes of this removal. 28 U.S.C. § 1441(b) (for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded"); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant"); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.").

### C. The Amount In Controversy Is More Than $12 Million, Which Exceeds The $5 Million Statutory Threshold Under CAFA

29.     Under 28 U.S.C. § 1332(d)(2), "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs[.]" Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6).

30.     In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 40.

31.     The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court **should be resolved in favor of federal jurisdiction**. *Id.* at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case. . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

32.     Where, as here, a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a **preponderance of the evidence** that the amount in controversy exceeds the statutory minimum. *See Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 553-54 ("Removal is proper on the basis of an amount in controversy asserted by the defendant if the district court finds, by the **preponderance of the evidence**, that the amount in controversy exceeds the

7

jurisdictional threshold"); *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) (holding that "the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *accord Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy . . . we therefore apply the preponderance of the evidence burden of proof to the removing defendant"); *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met"); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (holding that under the "preponderance of the evidence" standard, "the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount").

33.    To satisfy this standard, the "defendants' notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 554.

34.    The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

35.    For purposes of ascertaining the amount in controversy, "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *3 (E.D. Cal. May 1, 2007).

36.    As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez*, 372 F.3d at 1117;

*see also Rodriguez*, 728 F.3d at 981 ("we cannot now say that a plaintiff, in the class action context, has the 'prerogative ... to forgo a potentially larger recovery to remain in state court'"; a plaintiff "may not 'sue for less than the amount she may be entitled to if she wishes to avoid federal jurisdiction and remain in state court'").

37. If a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought. She did not.

*Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Arreola v. The Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

38.     Numerous other District Courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate. *See Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d, 1025 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate—especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice – or other similar language – and where the plaintiff offers no evidence rebutting this violation rate"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Soratorio*, *LLC*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

39.     As set forth below, the alleged amount in controversy implicated by the class-wide allegations **exceeds $12 million**. All calculations supporting the amount in

10

controversy are based on the Complaint's allegations, assuming, without any admission of the truth of the facts alleged and solely for purposes of this Notice of Removal, that liability is established.

**1.  The Second Cause Of Action For Unpaid Overtime: The Amount In Controversy Exceeds $767,448.66 Based On Only 15 Minutes Of Unpaid Overtime Per Employee Per Week**

40.  Plaintiff alleges that Defendants have a "uniform policy and practice" that "is intended to purposefully avoid the payment for all time worked as required by California law…." (Complaint ¶18.) Specifically, Plaintiff alleges that "Defendant failed to provide all the legally required off-duty meal breaks to Plaintiff and the other California Labor Sub-Class Members" and that "Plaintiff and the other California Labor Sub-Class Members were from time to time not fully relieved of duty by Defendant for their meal periods." (*Id.* at ¶76.)

41.  Plaintiff's Second Cause of Action seeks recovery of "unpaid overtime." (Complaint, ¶¶59-74.) In the Prayer For Relief, Plaintiff further seeks "an order requiring Defendant to pay all wages and all sums unlawfully withheld from compensation due to Plaintiff and the other members…." (Prayer For Relief, ¶1.)

42.  Defendants require non-exempt hourly employees to clock out during their 30-minute meal period. (Piorkowski Decl., ¶12.) Therefore, Defendants' non-exempt, hourly employees are not paid during their meal period. (*Id.*)

43.  Because Plaintiff alleges that Plaintiff and the putative class members were not fully relieved of their job duties during their meal periods, Plaintiff contends that she and the putative class members were working "off-the-clock" during meal periods. Based on these allegations of the Complaint, Plaintiff and the putative class members seek recovery of wages, including overtime pay for hours that they allegedly worked during meal periods but were not paid for.

44.  California Labor Code section 510(a) states that "any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . .

11

shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."

45.     The statute of limitations for recovery for overtime pay under California Labor Code section 510 pay is three years. Cal. Civ. Proc. Code § 338. The limitations period is extended to four years when a plaintiff also seeks restitution for the Labor Code violations. *Falk v. Children's Hosp. Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 (2015) (holding that "actions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation"). Accordingly, the proposed class period for the second cause of action begins on July 7, 2015.

46.     In this case, the average hourly rate of the putative class members is $18.04. (Piorkowski Decl., ¶11.) The average overtime rate would be no less than $27.06 ($18.04 x 1.5). The putative class members are also paid on a bi-weekly basis. (Piorkowski Decl., ¶11.)

47.     During the proposed class period of July 7, 2015 and April 30, 2019, the putative class members worked approximately 56,722 pay periods. (Piorkowski Decl., ¶13.) Based on the allegations of the Complaint, if each putative class member is entitled to 15 minutes of unpaid overtime per week, or 30 minutes of unpaid overtime per pay period, the amount in controversy on this claim would equal no less than **$767,448.66** ($27.06 x 1/2 hour x 56,722 pay periods).

### 2.     The Third Cause Of Action For Unpaid Meal Period Premiums: The Amount In Controversy Exceeds $1,023,264.88 Based On Only One Hour Of Premium Pay Per Employee Per Pay Period

48.     Plaintiff alleges that "Defendant[s], as a matter of company policy, practice and procedure, intentionally, knowingly, and systematically failed to compensate Plaintiff and the other members of the California Class for missed meal and rest periods." (Complaint ¶18.) Plaintiff also alleges that "Defendant[s] failed to provide all the legally required off-duty meal breaks to Plaintiff and the other California Labor Sub-Class Members as required by the applicable Wage Order and Labor Code." (Complaint, ¶76.)

49.    In her Prayer For Relief, Plaintiff seeks to recover from Defendants "[m]eal and rest period compensation pursuant to California Labor Code Section 226.7 and the applicable IWC Wage Order." (Prayer For Relief, ¶2(C).)

50.    California Labor Code Section 512 provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes…." Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes…." California Labor Code Section 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods. An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

51.    The statute of limitations for recovery for meal period premium pay under California Labor Code section 226.7 is three years. *Murphy v. Kenneth Cole Prods.*, Inc., 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). The statute of limitations is extended to four years when a plaintiff also pursues an action for restitution under the California Business and Professions Code sections 17200, *et seq. See Falk*, 237 Cal. App. 4th at 1462, n.12 (holding that "actions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation"). Accordingly, the proposed class period for the third cause of action begins on July 7, 2015.

52.    Based on the allegations of the Complaint, assuming each putative class member is entitled to one hour of premium pay per pay period for the alleged non-provision of meal periods, the amount in controversy on this claim would equal no less than **$1,023,264.88** ($18.04 x 56,722 pay periods).

13

57625606v.2

### 3. The Fourth Cause Of Action For Unpaid Rest Period Premiums: The Amount In Controversy Exceeds $1,023,264.88 Based On Only One Hour Of Premium Pay Per Employee Per Pay Period

53. Plaintiff alleges that "Defendant[s], as a matter of company policy, practice and procedure, intentionally, knowingly, and systematically failed to compensate Plaintiff and the other members of the California Class for missed meal and rest periods." (Complaint ¶18.) Specifically, Plaintiff alleges that "Plaintiff and other California Labor Sub-Class members were periodically denied their proper rest periods by Defendant and Defendant's managers." (Complaint, ¶80.)

54. In her Prayer for Relief, Plaintiff seeks to recover from Defendant "all wages and all sums unlawfully withheld from compensation [and] due to Plaintiff and the other members of the California Class." (Prayer For Relief, ¶1.) Plaintiff also seeks "restitutionary disgorgement" for "restitution of the sums incidental to Defendant's violations due to Plaintiff and the other members of the California Class." (*Id.*)

55. Under California law, "[e]very employer shall authorize and permit all employees to take rest periods, which … shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1028 (2012). California Labor Code Section 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods. An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon*, 2010 WL 1753194 at *4.

56. The statute of limitations for recovery for rest period premium pay under California Labor Code section 226.7 is three years. *Murphy*, 40 Cal. 4th at 1099 ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). The statute of limitations is extended to four years when a plaintiff also pursues an action for restitution under the California Business and Professions Code sections 17200, *et seq. See Falk*, 237 Cal. App. 4th at

1462, n.12. Accordingly, the proposed class period for the fourth cause of action begins on July 7, 2015.

57.     Based on the allegations of the Complaint, assuming each putative class member is entitled to one hour of premium pay per pay period for the alleged non-provision of rest periods, the amount in controversy on this claim would equal no less than **$1,023,264.88** ($18.04 x 56,722 pay periods).

### 4.     The Fifth Cause Of Action For Non-Compliant Wage Statements: The Amount In Controversy Exceeds $1,793,500.00

58.     Plaintiff alleges that "Defendant also failed to provide Plaintiff and the other members of the California Class with complete and accurate wage statements which failed to show, among other things, the correct overtime rate for overtime worked, including, work performed in excess of eight (8) hours in a workday and/or forty (40) hours in any workweek, and the correct penalty payments for missed meal and rest periods." (Complaint, ¶85.)

59.     Plaintiff also alleges that "Defendant failed to provide all the legally required off-duty meal breaks to Plaintiff and the other California Labor Sub-Class Members" and that "Plaintiff and the other California Labor Sub-Class Members were from time to time not fully relieved of duty by Defendant for their meal periods." (*Id.* at ¶76.)

60.     As discussed above, given that Plaintiff alleges that she and the other putative class members worked "off the clock" during meal periods and were not compensated for hours worked, Plaintiff also contends that the wage statements are inaccurate to show all hours worked—"an employer must furnish employees with an 'accurate itemized' statement in writing showing … total hours worked by the employee. (Complaint ¶84.)

61.     California Labor Code section 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee.

62.    The statute of limitations for recovery of penalties under California Labor Code section 226 is one year. *Caliber Bodyworks, Inc. v. Sup. Ct.*, 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a). Accordingly, the statutory period for a claim under California Labor Code section 226 begins on June 7, 2018, which is one year prior to the date of the filing of the Complaint.

63.    During the statute of limitations period for the wage statement claim, from June 7, 2018, to April 30, 2019, there are at least 1,094 putative class members who, according to Plaintiff, failed to receive accurate wage statements. (Piorkowski Decl., ¶14.) The putative class members are paid on a bi-weekly basis. (Piorkowski Decl., ¶11.)

64.    The 1,094 putative class members worked at least 18,482 pay periods that could qualify for a wage statement penalty. (Piorkowski Decl., ¶14.) When including a $50 penalty for the initial wage statement and $100 for each subsequent wage statement (up to a maximum of $4,000 for each employee), the amount in controversy on this claim would equal no less than **$1,793,500.00**. (Piorkowski Decl., ¶14.)

### 5.    The Sixth Cause Of Action For Unreimbursed Business Expenses: The Amount In Controversy Exceeds $1,102,500.00

65.    Plaintiff alleges that Defendants failed "to indemnify and reimburse Plaintiff and the California Labor Sub-Class members for required expenses incurred in the discharge of their job duties for Defendant's benefit." (Complaint, ¶89.) Specifically, Plaintiff alleges that "Defendant[s]' uniform policy, practice and procedure was to not reimburse Plaintiff and the California Labor Sub-Class members for expenses resulting from using their personal cellular phones for Defendant[s] within the course and scope of their employment." (*Id.*) Plaintiff seeks to recover from Defendants "reimbursement for expenditures or losses incurred by [Plaintiff] and the California Labor Sub-Class Members in the discharge of their job duties for Defendant … with interest at the statutory rate and costs under Cal. Lab. Code § 2802." (*Id.* at 90.)

66.    An employer has a statutory obligation to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence

16

of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." Cal. Labor Code § 2802(a).

67.     The statute of limitations for recovery for unpaid business expenses under California Labor Code section 2802 pay is three years. Cal. Civ. Proc. Code § 338. The limitations period is extended to four years when a plaintiff also seeks restitution for the Labor Code violations. *Falk v. Children's Hosp. Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 (2015) (holding that "actions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation"). Accordingly, the proposed class period for the first cause of action begins on July 7, 2015.

68.     On average, Defendants have approximately 900 active non-exempt, hourly employees who work in California. (Piorkowski Decl. ¶10.) During the statute of limitations period of June 7, 2015, and July 10, 2019, there are approximately 49 months.

69.     Assuming that each active employee during the limitations period may recover cell phone expenses in the amount of $25 per month, the amount in controversy for the unpaid business expenses would equal no less than **1,102,500.00** ($25 x 900 active employees x 49 months).

### 6.     The Seventh Cause Of Action For Final Wages Not Timely Paid: The Amount In Controversy Exceeds $3,381,417.60

70.     Plaintiff alleges that "[t]he employment of Plaintiff and many California Labor Sub-Class Members terminated and Defendant has not tendered payment of overtime wages, to these employees who actually worked overtime." (Complaint, ¶97.) Plaintiff seeks to recover from Defendant "up to thirty days of pay as penalty for not paying all wages due at time of termination for all employees who terminated employment during the California Labor Sub-Class period" and "an accounting and payment of all wages due, plus interest and statutory costs allowed by law." (*Id.* at ¶98.)

NOTICE OF REMOVAL

71.    As discussed above, given that Plaintiff alleges that she and the other putative class members worked "off the clock" during meal periods and were not compensated for hours worked, Plaintiff also contends that she and the putative class members did not receive all wages owed at the time of their termination. (*Id.* at 98.)

72.    Under California Labor Code section 203(a), an employee may recover "the [daily] wages . . . as a penalty from the due date thereof at the same rate" but not "for more than 30 days."

73.    The statute of limitations period for California Labor Code section 203 penalties extends back only three years from the date of filing of the complaint, or June 7, 2016. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010) (holding that "if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have … three years to sue for the unpaid final wages giving rise to the penalty"). Accordingly, the proposed class period for a claim under California Labor Code section 203 begins on June 7, 2016, which is three years prior to the date of the filing of the Complaint.

74.    During the applicable statute of limitations period between June 7, 2016, and April 30, 2019, there are at least 781 proposed class members who are former non-exempt employees. (Piorkowski Decl., ¶15.)

75.    Based on the average hourly rate of $18.04, the amount in controversy on this claim would equal no less than **$3,381,417.60** ($18.04 x 8 hours x 30 days x 781 employees).

**7.    The Eighth Cause Of Action For PAGA Penalties: The Amount In Controversy Exceeds $661,600.00**

76.    Plaintiff seeks to stack PAGA penalties on top of the penalties set forth in the underlying statutes discussed above for violations related to her second through seventh causes of action. (Complaint, ¶103; Prayer For Relief, ¶¶2-3.)

77.    PAGA has a one-year statute of limitations. *See Thomas v. Home Depot USA Inc.*, 527 F. Supp. 2d 1003, 1007 (N.D. Cal. 2007). Based on Plaintiff's allegations,

NOTICE OF REMOVAL

the PAGA period covers March 29, 2018 to the present and includes "all individuals who are or previously were employed by Defendants Aldi Inc. and/or AI California LLC …" during the PAGA period. (Complaint, ¶101.)

78.    Like her underlying claims, Plaintiff's PAGA claim is predicated upon the allegations that "Defendant (a) failed to provide Plaintiff and the other aggrieved employees accurate itemized wage statements; (b) failed to properly record and provide legally required meal and rest periods; (c) failed to pay overtime wages; (d) failed to pay wages when due; and (e) failed to reimburse employees for required expenses, all in violation of the applicable Labor Code sections in Labor Code Sections §§ 201, 202, 203, 204, 210, 226(a), 226.7. 510, 512, 558, 1194, 2802, and the applicable Industrial Wage Order(s)" (Complaint, ¶103.)

79.    Pursuant to Labor Code § 2699(f)(2), PAGA penalties are assessed at a rate of $100 per pay period per employee for the initial violation and $200 per pay period per employee for each subsequent violation.

80.    During the statute of limitations period for the PAGA claim, from March 29, 2018, to April 30, 2019, there are at least 1,167 "aggrieved" employees who, according to Plaintiff, (i) failed to receive accurate wage statements, (ii) failed to receive properly recorded and legally required meal periods, (iii) failed to receive properly recorded and legally required rest periods, (iv) failed to receive overtime wages, (v) failed to receive wages when due, and (vi) failed to receive reimbursement for required expenses. (Piorkowski Decl., ¶16.) The "aggrieved" employees are paid on a bi-weekly basis. (Piorkowski Decl., ¶11.) These 1,167 "aggrieved" employees had 22,079 pay periods during the PAGA period. (Piorkowski Decl., ¶16.)

81.    For the sake of simplicity, it is assumed that Defendants are liable only for one penalty in the amount of $100 per each alleged underlying violation per employee for the duration of the PAGA period. Because Plaintiff alleges six separate underlying Labor Code violations that are subject to PAGA penalties, the amount in controversy is as follows:

19

a) For the alleged failure to provide wages when due: there are 781 "aggrieved" employees who are former non-exempt employees from March 29, 2018, to April 30, 2019. (Piorkowski Decl., ¶15.) Thus, the amount in controversy for this portion of the PAGA claim is **$78,100.00** ($100 x 781 employees).

b) For the remaining five underlying Labor Code violations: there are 1,167 "aggrieved" employees from March 29, 2018, to April 30, 2019. (Piorkowski Decl., ¶16.) Each alleged violation puts an additional $116,700.00 ($100 x 1,167 employees) in controversy, for a total of **$583,500.00** ($116,700 x 5 separately alleged violations) in PAGA penalties just for these claims.

82.    In total, Plaintiff puts **$661,600.00** in controversy through her PAGA claims related to her underlying claims in causes of action two through seven. This figure is conservative because it assumes only one violation per employee for each of the underlying claims for the duration of the entire PAGA period, although Plaintiff alleges multiple violations per pay period for some of her claims.

### 8.    The Attorneys' Fees And Costs

83.    For purposes of determining the amount in controversy, only "interest and costs" are excluded from the calculation. 28 U.S.C. § 1332. Therefore, the Court must consider the aggregate of general damages, special damages, punitive damages, and attorneys' fees. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.").

84.    A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy. *Longmire v. HMS Host USA, Inc.,* 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012 ("[C]ourts may take into account reasonable

estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA."); *Muniz v. Pilot Travel Centers LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007) (attorneys' fees appropriately included in determining amount in controversy).

85.     The Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (holding that "unaccrued post-removal attorneys' fees can be factored into the amount in controversy" for CAFA jurisdiction).

86.     In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78-84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S.

Dist. LEXIS 86920 at *16-18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund). Even under the conservative benchmark of 25 percent of the total recovery for the applicable claims, attorneys' fees alone would be upward of **$2,438,249.00** in this case which is 25% of the potential recovery of the claims alleged in the Complaint—$767,448.66 (unpaid overtime) + $1,023,264.88 (unpaid meal premiums) + $1,023,264.88 (unpaid rest premiums) + $1,793,500.00 (wage statement claim) + $1,102,500.00 (reimbursement claim) + $3,381,417.60 (waiting time penalties) + $661,600.00 (PAGA penalties).

### 9. The Total Aggregate Amount In Controversy Exceeds $12 Million

87.   Although Defendants deny Plaintiff's allegations that she or the putative class are entitled to any relief for the above-mentioned claims, based on the foregoing calculations, the aggregate amount in controversy for the putative class for all asserted claims is approximately **$12,191,245.02**:

| Cause of Action | Amount In Controversy Based On The Allegations Of The Complaint |
|---|---|
| Unpaid Overtime | $767,448.66 (fifteen minutes of overtime per employee per week) |
| Unpaid Meal Period Premiums | $1,023,264.88 (one hour of premium pay per employee per pay period) |
| Unpaid Rest Period Premiums | $1,023,264.88 (one hour of premium pay per employee per pay period) |
| Non-Compliant Wage Statements | $1,793,500.00 (based on 18,482 pay periods) |
| Unreimbursed Business Expenses | $1,102,500.00 ($25 per month per employee for 49 months) |
| Final Wages Not Timely Paid | $3,381,417.60 (based on 781 former employees) |
| PAGA Penalties | $661,600.00 |

NOTICE OF REMOVAL

| Attorneys' Fees and Costs | $2,438,249.00 (based on 25% of the potential recovery) |
|---|---|
| **Total** | **$12,191,245.02** |

88.     Although Defendants deny Plaintiff's allegations that she or the putative class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, and a conservative estimate based on those allegations, the total amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

89.     Because minimal diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2). This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. § 1441(a).

90.     To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. § 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

## IV.    REMOVAL UNDER FEDERAL QUESTION

### A.    This Court Has Federal Question Jurisdiction Based On The Fair Labor Standards Act

91.     A case presents a "federal question" if a claim "'aris[es] under the Constitution, laws, or treaties of the United States.'" *Sullivan v. First Affiliated Securities, Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987) (quoting 28 U.S.C. § 1331).

92.     Plaintiff's Complaint presents an original federal question under the FLSA, a federal law, which independently confers this Court with original jurisdiction over this action.

93.     Plaintiff specifically alleges under her First Cause of Action that "Defendant has engaged and continues to engage in business practice which violates … Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*" (Complaint ¶47.) In the Prayer of Relief, Plaintiff seeks to recover "compensatory damages for FLSA overtime

23

compensation due Plaintiff and the other members of the California Labor Sub-Class…." (Prayer For Relief, ¶2(B).)

94.   This FLSA action therefore presents a federal question over which this Court has original jurisdiction. 28 U.S.C. § 1331; *see also Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1074 n.1 (9th Cir. 2016) ("Because [plaintiff] pleaded a claim under the FLSA, a federal law, the district court also had federal question jurisdiction [over alleged 'violations of California employment laws']"); *Helmer v. Brandano*, 875 F.2d 318 (9th Cir. 1989) ("district court had federal question jurisdiction over [plaintiff's] first action under 28 U.S.C. § 1331 (1982) and the Fair Labor Standards Act"); *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 859 (9th Cir. 1979) ("Both the claim under the FLSA and the claim based on a breach of the collective bargaining agreement present federal questions"); *Helton v. Factor 5, Inc.*, 2014 WL 4243540, at *1 (N.D. Cal. Aug. 27, 2014) ("instant action was commenced in the Superior Court of California, County of Marin. After the Plaintiffs filed an amended complaint adding federal claims under the Fair Labor Standards Act ('FLSA'), 29 U.S.C. § 216, the individual Defendants removed the action to this Court on the basis of federal question jurisdiction").

**B.**   **This Court Has Supplemental Jurisdiction Over Plaintiff's Related State Law Claims**

95.   Plaintiff asserts the remainder of her claims under the California Labor Code, the California Business and Professions Code, and California's PAGA statute. Plaintiff's claims under California law arise from, relate to, and emanate from the same alleged employment relationship between Plaintiff and Defendants that is the subject of the federal question claims, and raise the same issue as to whether Plaintiff and the putative class were properly compensated for overtime due to alleged off-the-clock work, properly compensated for overtime pay, properly compensated for meal and rest premiums at the correct rates, properly paid wages upon separation, and provided accurate and itemized wage statements.

96.     Therefore, the claims are so related that they form part of the same case or controversy as the FLSA claim. Accordingly, this Court has supplemental jurisdiction over Plaintiff's claims under California law pursuant to 28 U.S.C. § 1367(a). *See Geanta v. Compass Health, Inc.*, 673 F. App'x 768, 769 (9th Cir. 2017) (reversing dismissal of related state law claims on grounds that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"); *Garcia v. NRI USA, LLC*, 2018 WL 2315962, at *3 (C.D. Cal. May 21, 2018) (supplemental jurisdiction proper where complaint alleged FLSA claim and "state-law claims under the California Labor Code and Unfair Competition Law"; "a court can exercise supplemental jurisdiction over state-law wage-and-hour class claims when original jurisdiction is present due to an FLSA claim. The Court finds that the state-law claims do not 'predominate' over the federal claim, that those claims do not present novel or complex issues of state law, and that 'exceptional circumstances' warranting dismissal do not exist. Therefore, the Court exercises jurisdiction over Plaintiff's state-law claims"); *Jarrell v. Amerigas Propane, Inc.*, 2017 WL 8314661, at *1 (N.D. Cal. Aug. 4, 2017) ("Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). The Court has supplemental jurisdiction over Plaintiff's state-law claims" for meal period, rest period, overtime, minimum wage, and wage statement violations); *Lowenthal v. Quicklegal, Inc.*, 2016 WL 5462499, at *5 (N.D. Cal. Sept. 28, 2016) ("court has federal-question jurisdiction over [plaintiff's] FLSA claim and supplemental jurisdiction over the others — all of which relate to his alleged employment and non-payment, and thus are 'so related' to his FLSA claim"); *Leon v. Gordon Trucking, Inc.*, 76 F. Supp. 3d 1055, 1058 (C.D. Cal. 2014) (noting "the court's federal question jurisdiction based on [plaintiff's] FLSA claim" and supplemental jurisdiction for claims under California Labor Code §§ 201, 202, 226, 226.7, 512, and 2802); *Hernandez v. Martinez*, 2014 WL 3962647, at *3 (N.D. Cal. Aug. 13, 2014) ("Plaintiffs assert claims under the FLSA and various California wage and hour statutes. … [A] FLSA cause of

action raises a federal question, and the Court properly may exercise subject matter jurisdiction over the FLSA cause of action. Because the state law claims arise out of the same factual allegations as the FLSA cause of action, the Court exercises supplemental jurisdiction over those claims"); *Milton v. TruePosition, Inc.*, 2009 WL 323036, at *1 (N.D. Cal. Feb. 9, 2009) ("The complaint alleges one claim for relief under the Federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* and five claims for relief under various California laws. … Plaintiffs allege violations of various employment laws, claiming that defendant failed to pay plaintiffs for all the hours they worked, failed to pay overtime, and failed to provide meal and rest periods. … [T]here is federal question jurisdiction over the FLSA claim pursuant to 28 U.S.C. § 1331, and that the Court has … supplemental jurisdiction under 28 U.S.C. § 1367").

97.    This Court retains original jurisdiction over the entire civil action here—indeed, only one claim is needed for original jurisdiction for an entire civil action. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 559 (2005) ("[i]f the court has original jurisdiction over a single claim in the complaint, it has original jurisdiction over a 'civil action' within the meaning of § 1367(a), even if the civil action over which it has jurisdiction comprises fewer claims than were included in the complaint"); *Saxe v. Cast & Crew Payroll, LLC*, 2015 WL 4648041, at *8 (C.D. Cal. Aug. 4, 2015) (same).

## V.    VENUE

98.    Venue lies in the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(c). This action originally was brought in San Diego County Superior Court of the State of California, which is located within the Southern District of California. 28 U.S.C. § 84(c). Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the San Diego County Superior Court of the State of California as required under 28 U.S.C. § 1446(d).

57625606v.2

## VI.    NOTICE TO STATE COURT AND TO PLAINTIFF

99.    Defendants will give prompt notice of the filing of this Notice of Removal to Plaintiff and to the Clerk of the Superior Court of the State of California in the County of San Diego. The Notice of Removal is concurrently being served on all parties.

## VII.    PRAYER FOR REMOVAL

100.    WHEREFORE, Defendants pray that this civil action be removed from Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California.

DATED: July 10, 2019                    Respectfully submitted,

SEYFARTH SHAW LLP


By:  /s/ Leo Q. Li
Laura Wilson Shelby
Leo Q. Li
Jennifer R. Nunez
Attorneys for Defendants
ALDI INC. and AI CALIFORNIA LLC

NOTICE OF REMOVAL

57625606v.2